Date signed November 03, 2006



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
at GREENBELT

In Re:

                              *

Melvin Stanley Yates, II,          *        Case No. 05-14068-TJC

                              *             (Chapter 7)

       Debtor                *

                              *

                              *

                              *

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *    *

                              *        Adv. Proc. No. 06-1305-TJC

Melvin Stanley Yates, II,          *

                              *

       Plaintiff              *

                              *

vs.                            *

                              *

District of Columbia,           *

                              *

       Defendant           *

                              *

## <u>MEMORANDUM OF DECISION</u>

Defendant, the District of Columbia (the "District"), filed a motion for summary

judgment in this adversary proceeding on May 5, 2006.  Plaintiff Melvin Yates, the chapter 7

Debtor (the "Debtor"), filed an opposition, and the District filed a reply brief.  The Court has reviewed the briefs and all of the exhibits submitted therewith. Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the parties' briefs and the exhibits submitted in support.  See Local Rule 9013-1(b)(4).[1]  For the reasons stated in this memorandum, the District's motion for summary judgment will be granted.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and the standing order of reference of the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

## I.  PROCEDURAL HISTORY

This adversary proceeding was commenced by the Debtor on March 16, 2006 with the filing of Debtor's Complaint for Permanent Injunction to Bar Violations of 11 U.S.C. §525(a) and an Injunction of This Court, and for Damages in Violation of the Injunction.[2]  The Debtor sought a permanent injunction to enjoin the District from: (1) pursuing contempt proceedings based upon pre-petition claims against the Debtor in District of Columbia v. Yates, Civil Action No. 962-02, in the Superior Court for the District of Columbia (the "Civil Action"); (2) proceeding against the Debtor to enforce an injunction issued in the Civil Action based upon pre-petition transactions; and (3) proceeding against the Debtor to collect any civil penalties awarded in the Civil Action based upon 11 U.S.C. §523(a)(2) claims.  In addition, the Debtor sought

---

[1] As explained below, the Debtor filed a motion for a temporary restraining order and preliminary injunction with the complaint. The Court heard lengthy argument on that motion, which presented issues that are substantially similar to those addressed herein.

[2] The complaint was amended on March 21, 2006 to include an allegation regarding the District's violation of 11 U.S.C. §524(a)(2). The references to complaint in this memorandum are to the amended complaint.

damages against the District for its alleged violation of the preliminary injunction entered by this court on October 7, 2003 and for violation of 11 U.S.C. §§ 525(a) and 524(a)(2).

In connection with the complaint, the Debtor filed a motion for a temporary restraining order and a preliminary injunction against the District,[3] and a hearing was held on the motion on April 17, 2006. At the conclusion of the hearing, this court issued a bench ruling denying the motion for the temporary restraining order and preliminary injunction.[4]

## II.  STATEMENT OF FACTS NOT IN DISPUTE

Much of the relief requested by the Debtor already has been addressed by one or more courts through the history of this case or centers on the meaning of prior court rulings. Accordingly, the court will repeat in some detail the procedural history of the litigation between the Debtor and the District as pertinent to the Debtor's claims for relief in his complaint.

The dispute between the parties began in June 2001 when the District initiated criminal proceedings against the Debtor in the District of Columbia. In the criminal proceedings, the District alleged that the Debtor committed fraud and misconduct in the District in the operation of his household goods moving and storage business, M.Y. Enterprises, Inc. Pursuant to an October 2001 plea agreement, the Debtor pled guilty and was sentenced to jail time and agreed to pay restitution to consumers.

In February 2002, the District initiated the Civil Action in the Superior Court, which was a civil enforcement penalty proceeding against the Debtor and M.Y. Enterprises, Inc. for

---

[3] The Debtor amended the motion for a temporary restraining order and preliminary injunction on April 6, 2006.

[4] The Debtor appealed the April 17, 2006 ruling to the United States District Court for the District of Maryland on April 17, 2006. No stay has been granted of this court's order denying the preliminary injunction.

misleading consumers in violation of the District of Columbia Consumer Protection Procedures Act. On February 26, 2002, the Superior Court entered a preliminary injunction against the Debtor (the "Sup. Court 2002 Injunction"). In the Sup. Court 2002 Injunction, the Superior Court made detailed findings of fact concerning the unethical and fraudulent business practices of the Debtor and his companies in the household goods moving business. Sup. Court 2002 Injunction at p. 2. In the Sup. Court 2002 Injunction, the Superior Court enjoined the Debtor from continuing to engage in such practices (id. at p. 3-4), and required that the Debtor post a $100,000 surety bond in the name of the District as surety for the benefit of any consumer injured as a result of the Debtor's misconduct while engaged in the moving business. Id. at p. 5-6.

The Debtor did not post the required surety bond, and the Superior Court found him in contempt of the Sup. Court 2002 Injunction. The District sought a contempt order after the Debtor began operating Worldwide Moving & Storage, Inc. without obtaining the required surety bond.[5]

The Debtor filed his chapter 7 petition with this court on March 19, 2003, and a discharge order was entered on June 20, 2003.[6] The District commenced an adversary proceeding number 03-1218 against the Debtor (the "03-1218 Action") seeking a determination that certain claims

_____

[5] M.Y. Enterprises, Inc. filed a chapter 7 petition with this court on March 21, 2002, and ceased operating shortly thereafter.

[6] The case was closed on December 28, 2005. In connection with the filing of the adversary proceeding complaint, the Debtor moved to reopen his bankruptcy case, and that motion was granted on March 20, 2006.

4

against the Debtor were nondischargeable under 11 U.S.C. §§523(a)(2)[7] and (a)(7)[8]. The parties entered into a stipulation dated March 23, 2004 (the "Stipulation"), which Stipulation provides the basis for one of the claims for relief by the Debtor in his complaint in this case. In the Stipulation, the District agreed to dismiss with prejudice any assertion of nondischargeability of debts under 11 U.S.C. §523(a)(2), and to dismiss without prejudice the "remaining counts of paragraph 2 of the complaint" in the 03-1218 Action. Stipulation, March 23. 2004, entered in the 03-1218 Action.  The "remaining counts raised in paragraph 2" of the complaint were for penalties, restitution, costs and attorney fees and "monetary awards" in the Civil Action that would be nondischargeable under 11 U.S.C. §523(a)(7).  Complaint to Determine Dischargeablity of Debts at p. 1-2, June 19, 1003, filed in the 03-1218 Action.

The Debtor commenced adversary proceeding number 03-1244 against the District (the "03-1244 Action"), seeking to enjoin the District from continuing the Civil Action and to hold the District liable for damages resulting from alleged violations of the automatic stay under 11 U.S.C. §362.  In the 03-1244 Action, this court issued a preliminary injunction on October 7, 2003 (the "Bank. Court 2003 Injunction"). The Bank. Court 2003 Injunction granted in part and denied in part the Debtor's requested relief.  Because the Debtor's complaint in this case raises issues concerning the scope of the second "Further Ordered" paragraph of the Bank. Court 2003 Injunction, it will be repeated here in its entirety:

---

[7] As pertinent to this case, Section 523(a)(2) excepts from discharge any debt "…obtained by (A) false pretenses, a false representation or actual fraud…" 11 U.S.C. § 523(a)(2).

[8] As pertinent to this case, Section 523(a)(7) excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to or for the benefit of a governmental unit, and is not compensation for actual pecuniary loss…"  11 U.S.C. § 523(a)(7).

> FURTHER ORDERED: That the District of Columbia be and is
> hereby enjoined from conditioning any license or employment
> opportunity of Mr. Yates based upon his payment or nonpayment or
> on the posting of the aforementioned surety bond for the benefit of
> any consumer injured, as defined in the Preliminary Injunction, to
> the extent such payment, nonpayment, or bond requirement relates
> to any claims arising prior to March 19, 2003, which have been
> discharged by the discharge order entered herein unless and until
> any and all of such claims are determined herein to be non-
> dischargeable.

Bank. Court 2003 Injunction at p. 2. The Bank. Court 2003 Injunction specifically permitted the

District to seek enforcement of the surety bond requirement in the Sup. Court 2002 Injunction

with regard to claims that arose after the petition date, March 19, 2003, but prohibited the

District from conditioning any license or employment of the Debtor based upon the Debtor's

payment of the surety bond to the extent the bond requirement was imposed as surety for pre-

petition claims.

Subsequently, the parties filed summary judgment motions in both the 03-1218 and 03-

1244 Actions. As pertinent here, and giving due regard to the Stipulation, this court permitted the

District to go forward with the Civil Action to seek relief that would be nondischargeable under

Section 523(a)(7), subject to the terms of the Bank. Court 2003 Injunction. Order Granting

Summary Judgment in Part and Denying Summary Judgment at p. 3, 5, entered July 20, 2004,

(entered in the 03-1288 Action and the 03-1244 Action). This court explained the determination

of whether any awards obtained by the District in the Civil Action would be nondischargeable

would be made if and when the District obtained such awards.

This court next denied the Debtor's request for a stay pending appeal of the court's order

allowing the Civil Action to proceed.  In doing so, this court specifically reiterated its prior

6

ruling on an issue the Debtor continues to raise in this case.  The Debtor contended that because

the District had dismissed with prejudice the Section 523(a)(2) claims in the Stipulation, and

therefore those claims were discharged, the District was precluded from relying on any evidence

of the fraudulent nature of those claims in pursuing the Civil Action. The introduction of that

evidence, argued the Debtor, would violate the discharge provisions of the Bankruptcy Code and

was prohibited because those claims had been dismissed with prejudice. This court previously

rejected that contention, and said so again in the order denying the stay pending appeal:

> Th[is] court held that the withdrawal with prejudice of the Section
> 532(a)(2) nondischargeablility count by D.C. in its adversary
> proceeding was preclusive only of whether any alleged debt of Plaintiff
> in favor of D.C. was nondischargeable pursuant to Section 523(a)(2);
> but not as to the underlying existence of fraud. Because the issue of
> nondischargeability is one that only the bankruptcy court has the
> jurisdiction to adjudicate, see *Brown v. Felsen,* 442 U.S. 127, 135-36,
> 99 S. Ct. 2005, 2211-12 (1979), under res judicata theories, D.C. is
> precluded from ever seeking a determination that any such debt is
> nondischargeable under Section 523(a)(2). However, th[is] court ruled
> that D.C. was not precluded from litigating the existence of, or
> attempting to litigate the existence of fraudulent acts in the Superior
> Court in connection with the Civil Litigation claims that may be in the
> nature of Section 523(a)(7) penalties.

Order Denying Plaintiff's Motion for Injunction Pending Appeal at p. 5-6, September 8, 2004,

entered in the 03-1244 Action.[9]

---

[9]Prior to trial in the Civil Action, the Debtor moved in the Superior Court to preclude any evidence of fraud based
on actions that gave rise to the claims under 11 U.S.C. §523(a)(2), arguing that these claims were dismissed with
prejudice.  The Superior Court denied that motion, and permitted the fraud evidence to be used by the District in the
Civil Action. Order Denying Defendant's Motion In Limine, May 20, 2004 (entered in the Civil Action).  The
Debtor then moved in the 03-1244 Action for a preliminary injunction prohibiting the District from using the
Section 523(a)(2) fraud evidence in the Civil Action as violative of the Bankruptcy Code, and the motion was denied
by this court by order entered on August 9, 2004.  The Debtor appealed the bankruptcy court order and the United
States District Court affirmed the bankruptcy court's ruling. Docket 123 in the 03-1244 Action; Case No. 04-02845-
RTW, United States District Court for the District of Maryland.  The Fourth Circuit affirmed the district court's

The Superior Court conducted a jury trial on the Civil Action in November 2004.   The Jury Verdict form reflects that the jury found numerous instances of misrepresentations of material fact by the Debtor and his company M.Y. Enterprises, Inc. On December 23, 2004, the Superior Court entered in the Civil Action the Order (1) Denying [Debtor's] Motion for Judgment as a Matter of Law or in the Alternative a New Trial; and (2) Entering Final Judgment and Awarding Equitable Relief (the "Final Judgment"). As its title suggests, the Final Judgment both addressed the Debtor's motion for a new trial and awarded equitable relief.  In denying the Debtor's motion for a new trial, the Superior Court, among other things, concluded that the evidence supported a finding that the Debtor was liable both directly and as principal of M.Y. Enterprises, Inc.:  The Debtor "had dealings with … the consumers and made the misrepresentations or omitted material facts himself" and also was "responsible for all key decisions, and controlled the company's activities." Final Judgment at p. 4

In granting equitable relief, the Superior Court awarded civil penalties of $7,000 against the Debtor in favor of the District.  It also issued permanent injunctive relief against the Debtor and any of his companies, summarized briefly as follows:

- Requiring that the Debtor or his companies will not charge a consumer's credit card more than the original amount agreed to between the parties except in certain defined exceptions.

- Prohibiting the Debtor or his companies from misrepresenting the price of services, the compensation available to consumers for goods that are lost or damaged while in Debtor's custody, or the valuation coverage available to consumers for lost or damaged goods.

---

ruling in an unpublished decision on July 27, 2005. Case No. 04-2504, United States Court of Appeals for the Fourth Circuit.

- Requiring the Debtor and his companies to obtain signed disclosures from consumers prior to entering into contracts with them.

Final Judgment at p. 8-9.  Finally, the Superior Court required that the Debtor post a surety bond in the amount of $75,000 by February 14, 2005 or refrain from managing or controlling a company that provides local moves of household goods. Id. at p. 9. The bond was for the benefit of both the District and any consumer injured by the Debtor. The parties have stipulated that the bond was for the benefit only of certain claims that arose after the effective date of the Final Judgment – December 23, 2004.

On January 18, 2006, the Superior Court issued an order of civil contempt against the Debtor, finding that he did not comply with the terms of the Final Judgment, and ordered that his companies not engage in business in the District until he complied with the surety bond requirement of the Final Judgment.  Thereafter, the Debtor re-opened his bankruptcy case and filed this adversary proceeding seeking to prevent the District from enforcing against him the surety bond requirement in the Final Judgment on a number of grounds.

### III.  CONCLUSIONS OF LAW

The Debtor's complaint asserts five claims for relief.  In determining whether to grant summary judgment to the District, the court will address each of the Debtor's claims for relief in turn after reviewing the standards that apply to a motion for summary judgment.

### A.  Summary Judgment Standard

Summary judgment under Fed. R. Civ. P. 56, made applicable to these proceedings under Fed. R. Bankr. P. 7056, is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  One of the principal purposes of

summary judgment is to isolate and dispose of all factually unsupported claims or defenses.

Celotex v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  To that end, the court considers

all evidence in a light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986) (all justifiable inferences are drawn in the non-

movant's favor).  The mere existence of an alleged factual dispute does not defeat a motion for

summary judgment; rather the standard requires that there be no genuine issue of *material* fact.

Id. at 247-48.  Only disputes over the facts that might affect the outcome of the lawsuit under

applicable law will preclude entry of summary judgment.  Id.  Therefore, once a motion for

summary judgment is made and supported as provided in the Rule, the non-moving party must

set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. Proc. 56(e).

The nonmovant may rely on any evidentiary materials listed in Rule 56(c), except the motions

themselves.  Celotex, 477 U.S. at 325.  If reasonable minds could differ as to the import of the

evidence, summary judgment should not be granted.  Liberty Lobby, Inc., 477 U.S. at 248.

Here, there is no dispute of material fact as the entire record before this court consists of

documents, orders and other filings made in the Civil Action and the bankruptcy case.  Neither

party has objected to the submission of these record documents.  Rather, the dispute between the

parties revolves around the legal significance under the Bankruptcy Code of these documents,

primarily the enforcement of a surety bond requirement imposed upon the Debtor by the

Superior Court in the Civil Action.

### B.  The Debtor's First Claim for Relief: Section 525(a) of the Bankruptcy Code

In his first claim for relief, the Debtor contends that the District has willfully and

deliberately violated 11 U.S.C. §525(a) by obtaining a permanent injunction requiring the Debtor

10

to post a surety bond as a condition of employment or licensing based upon claims the District knew preceded the filing of the bankruptcy petition. Debtor's Amended Complain at p. 13. Based on the uncontroverted record of this case, however, the court has no difficulty concluding that the District has not violated Section 525(a) for two independent reasons: (1) the District did not seek or obtain the imposition of the surety bond and the injunction "solely because" the Debtor was a debtor in bankruptcy, was insolvent or failed to pay a dischargeable debt; and (2) the surety bond obligation is a nondischargeable debt. Accordingly, the court will grant summary judgment in favor of the District on the Debtor's first claim for relief.

Section 525(a) is intended to protect debtors from discriminatory treatment by a governmental unit.  It provides that a governmental unit may not deny, revoke, suspend, or refuse to grant a license, permit, charter, franchise, or other similar grant "solely because" a person (1) has been or is a debtor under the Bankruptcy Code; (2) has been insolvent before or during a case under the Bankruptcy Code; or (3) has not paid a debt that is dischargeable under the Bankruptcy Code.[10]

Section 525(a) is a codification of the Supreme Court's ruling in Perez v. Campbell, 402 U.S. 637, 91 S. Ct. 1704 (1971), in which the Supreme Court held that a state could not, without

---

[10] 11 U.S.C. §525(a) reads:

…a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

violating the fresh start policy, refuse to renew the driver's license of a debtor whose tort judgment, resulting from an automobile collision, was discharged and unpaid. See Collier on Bankruptcy, ¶ 525.02 (15th ed.). The provision is intended to protect the debtor's right to a "fresh start" in bankruptcy by prohibiting discriminatory treatment by a governmental unit.[11] "The common qualities of the property interests protected under section 525(a) ... are that these property interests are unobtainable from the private sector and essential to a debtor's fresh start." Stoltz v. Brattleboro Housing Authority (In re Stoltz), 315 F.3d 80, 90 (2d Cir. 2002). Section 525(a) was enacted "to ensure that governmental units do not deprive debtors of grants that are essential to a debtor's fresh start." Id. at 94.

Section 525 does not bar discrimination based upon nonpayment of a debt that is not dischargeable. Johnson v Edinboro State College, 728 F.2d 163 (3d Cir.1984) (Section 525(a) does not prohibit a state college from retaining a transcript of a debtor whose educational loans were not dischargeable). In addition, if there is a reason for the governmental action taken that is not based upon the prohibited criteria, then there has not been discrimination based solely on one of the prohibited criteria. "Section 525 means nothing more or less than that the failure to pay a dischargeable debt must alone be the proximate cause of the cancellation - the act or event that triggers the agency's decision to cancel, whatever the agency's ultimate motive in pulling the

---

[11] The legislative history of Section 525(a) makes it clear that the specific forms of discrimination set forth in the Bankruptcy Code are not exhaustive and that the courts are to apply Section 525(a) so as to protect debtors from forms of discrimination that are similar to those contained therein. Accordingly, for purposes of this decision, and because the Court concludes that the District did not violate Section 525(a), the Court assumes, but does not need to decide, that the imposition of the surety bond requirement would be the type of discriminatory treatment that would be prohibited by Section 525(a) if it were imposed for a prohibited reason.

trigger may be." <u>FCC v. NextWave Pers. Communs. Inc.,</u> 537 U.S. 293, 301-302, 123 S.Ct. 832 (2003).

In this case, there is no dispute that the District is a governmental agency as contemplated in Section 525.  However, the Court concludes that there are two independent reasons that the District did not violate Section 525(a) in seeking the imposition of the surety bond requirement or an  injunction based on the Debtor's inability to post the bond.

First, the record establishes overwhelmingly that the District did not seek to impose the surety bond requirement for a reason prohibited by § 525(a), but instead, sought the bond requirement to redress the Debtor's fraudulent and improper business practices in the District. The District brought the Civil Action against the Debtor before he filed his petition, based on his allegedly misleading consumers in connection with his household goods moving business in violation of the District of Columbia Consumer Protection Procedures Act. <u>Supra</u> at p. 3-4.  The District sought and obtained the Sup. Court 2002 Injunction in which the Superior Court made detailed findings of the Debtor's fraudulent business practices.  <u>Supra</u> at p. 4.  The Civil Action was tried before a jury, and the Verdict Form makes it clear that the jury found the Debtor and his companies guilty of misrepresentation.  <u>Supra</u> at p. 8.  In the Final Judgment, the Superior Court upheld the jury findings of fraud and enjoined the Debtor and his companies from engaging in unethical practices, required them to make certain disclosures to consumers before entering into contracts with them, and obligated them to post a surety bond to cover any consumer claims that arise from the Debtor's misrepresentations that occur after the effective date of the Final Judgment. <u>Supra</u> at p. 8-9.

Accordingly, this court finds and concludes that the District sought and obtained the surety bond and the permanent injunction based on the Debtor's fraudulent and unethical business practices.  The Debtor has come forward with no evidence to rebut the clear meaning of these documents and has failed to show that one of the three enumerated factors in Section 525(a) was the proximate cause for the District seeking the imposition of the surety bond. Hollow rhetoric does not suffice.  As such the District did not act "solely because" the Debtor was a debtor in a bankruptcy case, was insolvent or had failed to pay a dischargeable debt.  The District, therefore, did not violate Section 525(a) by seeking the imposition or enforcement of the injunction and surety bond requirements of the Final Judgment.

The court concludes that the District did not violate Section 525(a) for a second, alternative reason. As stated above, by its terms, Section 525(a) prohibits governmental discrimination based on a debtor's failure to pay a debt "that is dischargeable" under the Bankruptcy Code. To the extent the Debtor contends that the District is seeking sanctions for his failure to post a surety bond, the court concludes that the surety bond requirement is not a dischargeable debt under the Bankruptcy Code and, therefore, Section 525(a) does not apply to it. The court reaches this conclusion for two reasons.

First, both parties stipulated at the April 17, 2006 hearing that the surety bond requirement was a prospective remedy, and would be applied only to pay claims that arise after the effective date of the Final Judgment.[12]  As pertinent to this case, a discharge in a chapter 7 case only "discharges the debtor from all debts that arose before" the petition date.  11 U.S.C. § 727(b).  As such, the surety bond requirement was not subject to discharge in the Debtor's

chapter 7 case under the provisions of Section 727(b) because it was imposed to pay for post-petition consumer claims.  Accordingly, the decision of the District to prevent the Debtor from conducting business in the District without posting a surety bond to pay for future (i.e., post-petition) consumer claims cannot be said to violate Section 525(a).

Second, assuming arguendo, that the surety bond requirement is considered a pre-petition debt, it would not be subject to discharge under Section 523(a)(7).  See, In re Suter, 2005 WL 2989336, at *7 (D. Md. Nov. 7, 2005), aff'd, District of Columbia v. Suter, 2006 WL 1476200 (4th Cir. May 25, 2006).  Section 523(a)(7) provides that a debt is not dischargeable "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss" and creates a broad exception to discharge.  Kelly v. Robinson, 479 U.S. 36, 51, 107 S.Ct. 353 (1986); United States Dept. of Housing & Urban Develop. v. Cost Control Marketing & Sales Management of Virginia, Inc., 64 F.3d 920, 927 (4th Cir. 1995) ("Moreover, because discharge in bankruptcy is not intended to be a haven for wrongdoers" Section 523(a)(7) prevents the discharge of certain debts payable to governmental units.)   For a debt to be found non-dischargeable under Section 523(a)(7), three factors must be met: "(1) the debt must be payable to and for the benefit of a governmental unit; (2) it must be in the nature of a fine, penalty, or forfeiture; and (3) it must not be compensation for actual pecuniary loss."  In re Smith, 317 B.R. 302, 306 (Bankr. D.Md. 2004) (citing In re Hollis, 810 F.2d 106, 108 (6th Cir. 1987)).  Here, the District is a governmental unit.  See 11 U.S.C. § 101(27); In re Fay Assoc. Ltd. Partnership, 225 B.R. 1, 6 n. 4 (Bankr. D.D.C. 1998).  To determine whether the surety bond requirement meets the standard

---

[12] See Transcript of April 17, 2006 hearing on motion for preliminary injunction, e.g., p. 27, lns. 3-8.

of "fine, penalty or forfeiture" language of § 523(a)(7), the court looks to the underlying purpose of the statute.  Id. at 312.  In Suter, the court explained that:

> the purposes of the District of Columbia's consumer protection laws are to '(1) assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices; (2) promote, through effective enforcement, fair business practices throughout the community; and (3) educate consumers to demand high standards and seek proper redress of grievances.' D.C. Code § 28-3901.

Suter at *8.  The overall goal of the statute is to "provide oversight and enforcement of consumer protection law. . . ."  Id.  In Suter, the United States District Court for the District of Maryland affirmed a bankruptcy court holding that a restitution award under the District of Columbia's Consumer Protection Procedures Act was non-dischargeable under Section 523(a)(7).  Id. at *7. Based on the foregoing, this court finds that the surety bond required by the Superior Court of the District of Columbia is a fine, penalty or forfeiture under Section 523(a)(7) as it is an effort by the District to enforce the District's consumer protection laws.  Likewise, as the purpose of the surety bond requirement is to protect the citizens of the District, it is not compensation for pecuniary loss.  See, United Sates Dept. of Housing & Urban Develop. v. Cost Control, 64 F.3d at 928 ("We interpret these cases to say that so long as the government's interest in enforcing a debt is penal, it makes no difference that injured persons may thereby receive compensation for pecuniary loss.") The surety bond requirement, therefore, is a nondischargeable debt and Section 525(a) does not apply.

### C.  The Debtor's Second Claim For Relief: The Bank. Court 2003 Injunction

In his second claim for relief, the Debtor contends the District violated the second injunction provision of the Bank Court 2003 Injunction, by seeking a permanent injunction

16

requiring the Debtor to post a surety bond as a condition of employment based upon claims that

preceded the filing of the bankruptcy petition.  Debtor's Amended Complaint at p. 13.  Based on

the plain language of the Bank. Court 2003 Injunction and the record of this case, the court

concludes that the District has not violated the Bank. Court 2003 Injunction.  Accordingly, the

court will grant summary judgment in favor of the District on the Debtor's second claim for

relief.

      This court entered the Bank. Court 2003 Injunction after the Superior Court issued its

Sup. Court 2002 Injunction.  Broadly speaking, the gravamen of the Bank. Court 2003 Injunction

was that the District could not seek the imposition of an obligation on the Debtor to pay pre-

petition claims (including requiring the Debtor to post a bond for such claims) until such time as

those claims were determined to be nondischargeable.[13]  The Bank Court 2003 Injunction

contained the following provision upon which the Debtor relies in his second claim for relief:

> FURTHER ORDERED: That the District of Columbia be and is
> hereby enjoined from conditioning any license or employment
> opportunity of Mr. Yates based upon his payment or nonpayment or
> on the posting of the aforementioned surety bond for the benefit of
> any consumer injured, as defined in the Preliminary Injunction, to
> the extent such payment, nonpayment, or bond requirement relates
> to any claims arising prior to March 19, 2003 [the petition date],
> which have been discharged by the discharge order entered herein
> unless and until any and all of such claims are determined herein to
> be non-dischargeable.

Bank. Court 2003 Injunction at p. 2.

      In this case, the parties have stipulated that the surety bond obligation in the Final

Judgment serves only as surety for claims that arise after the effective date of the Final

---

[13] Because the court determines that the District has not violated the Bank. Court 2003 Injunction, the court need not
address whether that injunction has continued vitality now that the Civil Action has been resolved on the merits.

Judgment. As such, it cannot be used to pay any claims "arising prior to March 19, 2003" and does not violate the plain meaning of the Bank. Court 2003 Injunction.

The Debtor, however, takes a broader view of the above-quoted provision.  The Debtor seeks an expansive interpretation of the phrase "to the extent such payment, nonpayment, or bond requirement relates to any claims arising prior to March 19, 2003, which have been discharged …."  The Debtor contends that because the District successfully introduced in the Civil Action evidence of his fraudulent consumer conduct that gave rise to pre-petition claims, the imposition of the surety bond "relates" to those claims and therefore violates the Bank. Court 2003 Injunction.

When a party disputes the interpretation of an order, a court "must construe its meaning, and in so doing may resort to the record upon which the judgment was based." Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 940 (4th Cir. 1997) quoting  Spearman v. J & S Farms, Inc., 755 F. Supp. 137, 140 (D.S.C. 1990).  See also, Security Mut. Casualty Co. v. Century Casualty Co., 621 F.2d 1062, 1066 (10th Cir. 1980)  ("If there is any ambiguity or obscurity or if the judgment fails to express the rulings in the case with clarity or accuracy, reference may be had to the findings and the entire record for the purpose of determining what was decided."). The bankruptcy court is "in the best position to interpret its own orders." Tomlin, 105 F.3d at 941, quoting Texas N.W. Ry. Co. v. Atchison, Topeka and Santa Fe Ry. Co. (In re Chicago, Rock Island & Pac. R.R. Co.), 860 F.2d 267, 272 (7th Cir. 1988).

The court concludes that the Debtor's argument concerning the scope of the quoted provision of the Bank. Court 2003 Injunction is simply a rehash of the Debtor's argument that has been rejected by this court, the district court and the court of appeals, as well as by the

18

Superior Court, and perhaps the D.C. Court of Appeals as well. After the Debtor and the District

entered the Stipulation in which the District agreed to dismiss the Section 523(a)(2) claims (see

supra at p. 4-5), the Debtor sought on a number of instances to prevent the District from

introducing evidence of the fraudulent acts that gave rise to those claims. See note 9 and

accompanying text.  First, the Superior Court denied the Debtor's motion in limine seeking to

bar the introduction of evidence of the pre-petition fraudulent acts that gave rise to the dismissed,

dischargeable claims. Id.  Subsequently, this court reiterated its ruling that:

> ... the withdrawal with prejudice of the Section 532(a)(2)
> nondischargeablility count by D.C. in its adversary proceeding was
> preclusive only of whether any alleged debt of Plaintiff in favor of D.C.
> was nondischargeable pursuant to Section 523(a)(2); but not as to the
> underlying existence of fraud. Because the issue of nondischargeability
> is one that only the bankruptcy court has the jurisdiction to adjudicate,
> see *Brown v. Felsen,* 442 U.S. 127, 135-36, 99 S. Ct. 2005, 2211-12
> (1979), under res judicata theories, D.C. is precluded from ever seeking
> a determination that any such debt is nondischargeable under Section
> 523(a)(2). However, th[is] court ruled that D.C. was not precluded from
> litigating the existence of, or attempting to litigate the existence of
> fraudulent acts in the Superior Court in connection with the Civil
> Litigation claims that may be in the nature of Section 523(a)(7)
> penalties.

Order Denying Plaintiff's Motion for Injunction Pending Appeal at p. 5-6, September 8, 2004,

entered in the 03-1244 Action. The order reiterated a bench ruling made by this court in August

2004, to the same effect.  The Debtor appealed this court's order, and the district court affirmed

this bankruptcy court's ruling. Docket 123 in the 03-1244 Action; Case No. 04-02845-RTW,

United States District Court for the District of Maryland. See supra note 9.  The Debtor appealed

the district court's affirmance of the bankruptcy court to the Court of Appeals for the Fourth

Circuit. Id. In affirming the district court's ruling in an unpublished decision on July 27, 2005,

Case No. 04-2504, the court of appeal's description of the issue on appeal makes it clear that all

three courts resolved the very issue the Debtor continues to pursue in this case:

> Melvin Stanley Yates, II, appeals from the district court's order
> affirming the determination by the bankruptcy court that the District of
> Columbia was not precluded from introducing evidence of fraudulent
> conduct by Yates in its civil action to enforce the Consumer Protection
> Procedures Act, D.C. Code Ann. §§ 28-3904,3909 (2001), against
> Yates after it had voluntarily dismissed with prejudice its claim that
> any debt in its favor against Yates based on fraud was
> nondischargeable in Yates' bankruptcy action.

The court rejects the Debtor's contention that the Bank. Court 2003 Injunction should be

interpreted to mean that the District was barred from introducing evidence of Debtor's fraudulent

conduct in the Civil Action after it had voluntarily dismissed with prejudice its Section 523(a)(2)

claims. Such an interpretation of that order not only is inconsistent with its plain meaning, but it

is entirely contrary to the express record before this court.

### D.  The Debtor's Third Claim for Relief: Section 524(a)(2) of the Bankruptcy Code

In his third claim for relief, the Debtor contends that the District violated 11 U.S.C.

§524(a)(2) by seeking contempt sanctions against the Debtor for violating the requirement that

the Debtor must post a surety bond as a condition of employment or licensing based upon claims

that preceded the filing of the petition in bankruptcy.  Debtor's Amended Complaint at p. 14.

This court disagrees.

Section 524 describes the breadth and effect of an injunction granted under the Bankruptcy Code.[14]  Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. §524(a)(2).  A discharge under 11 U.S.C. §727(b) relieves a debtor of personal liability for all pre-petition debts but those excepted under the Bankruptcy Code.  Section 524(a)(2) "operates to permanently stay any attempt to hold the debtor personally liable for discharged debts."  In re Rosenfeld, 23 F.3d 833, 836 (4th Cir. 1994).  "The purpose of the discharge injunction is to ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it." In re Everly, 346 B.R. 791, 795 (8th Cir. B.A.P. 2006) (citations omitted).

In this case, the District was free under Section 523(a)(7) to pursue the Civil Action to seek an award consistent with that section.  The District did so and has obtained the award set forth in the Final Judgment.  As an alternative basis for its determination that the District did not violate Section 525(a), this court ruled above that the surety bond requirement was a nondischargeable debt pursuant to Section 523(a)(7) of the Bankruptcy Code.  Supra, at p. 15-16.  That holding is equally applicable here. Accordingly, for the reasons stated at pages 15-16, this court concludes that the surety bond requirement is nondischargeable pursuant to 11 U.S.C. § 523(a)(7).

---

[14] As stated above, the Debtor received a discharge in his chapter 7 case.

Further, as the parties have agreed that the surety bond applies to prospective claims only, and not to pre-petition debts, the injunction of Section 524(a)(2) is not applicable to that portion of the surety bond requirement.

### E.  The Debtor's Fourth Claim for Relief: Evidence of Year 2000 Claims

In the Debtor's fourth claim for relief, he contends that in its request to use pre-petition claims to support its application for a permanent injunction, the District asked the Superior Court to also allow it to use claims arising wholly outside of the District of Columbia for that purpose. He contends that the District was allowed to present the testimony of permanent residents of the State of Maryland and Virginia regarding their pre-petition claims against M.Y. Enterprises, Inc. and the Debtor.  According to the Debtor, these claims concerned acts performed wholly within the States of Maryland and Virginia, between residents of those states, and a Maryland corporation, and the Debtor who was, and still is, a Maryland resident.  The Debtor contends that these claims were discharged by the discharge order and could not be the basis for imposing civil penalties upon the Debtor because they occurred wholly outside the District and beyond the reach of its laws. Debtor's Amended Complaint at p. 14-15.

 First, to the extent the Debtor is arguing that the District violated the Bankruptcy Code by relying on evidence of pre-petition fraudulent conduct that may have given rise to claims that have been discharged, that claim has been addressed in the context of the Debtor's second claim for relief above, and will not be addressed again here. Supra at p. 16-20. See also supra at note 9 and accompanying text.

Second, whether the Superior Court properly allowed the jury to consider evidence of actions taken by the Debtor outside the District in determining whether the Debtor violated the

District's consumer protection laws is a matter exclusively within the purview of the Superior Court. That issue implicates no concern of the Bankruptcy Code. Thus to the extent the Debtor contends the Superior Court allowed the jury to consider acts that occurred outside of the District in determining whether the Debtor violated the District's consumer protection laws, the Debtor must seek redress in that court.

### F. The Debtor's Fifth Claim for Relief: The Scope of the Section 523(a)(2) Dismissal

In the Debtor's fifth claim for relief, he points out that the District dismissed with prejudice its claim for monetary awards under Section 523(a)(2). He contends that the civil penalty awarded by the Superior Court in the Final Judgment is a monetary award that was encompassed by the Stipulation that resulted in the dismissal of the Section 523(a)(2) claims. He therefore contends that the civil penalties awarded by the Superior Court should be barred by the District's dismissal with prejudice of the Section 523(a)(2) claims. Debtor's Amended Complaint at 15.

This claim fails for several reasons. First, 11 U.S.C. § 523(a)(2) excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud." In contrast, 11 U.S.C. § 523(a)(7) excepts from discharge any debt "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." By their own terms, these provisions encompass different types of debts and thus the Stipulation dismissing with prejudice the District's claims under Section 523(a)(2) does not bar the District from seeking fines and penalties under Section 523(a)(7). More critically, as the Debtor well knows, this court has previously held that the District may pursue any claims for fines and penalties under Section 523(a)(7) with the full knowledge that all claims arising under Section

23

523(a)(2) were dismissed with prejudice. Supra at 6. In addition, as set forth above in the section addressing the Debtor's second claim for relief, this court, the district court, the court of appeals, and the Superior Court all have held that the District is not barred from relying on the Debtor's fraudulent conduct that gave rise to the Section 523(a)(2) claims in pursuing the Section 523(a)(7) claims in the Civil Action. Finally, the Court has reviewed the Stipulation as well as the complaint in the 03-1218 Action, and concludes that the District was quite clear that it was dismissing with prejudice the Section 523(a)(2) claims, and not any awards in the Civil Action that would be nondischargeable under Section 523(a)(7).

In the Final Judgment, the Superior Court expressly stated that the award of $7,000 was a "civil penalty" payable to the District for the Debtor's violation of consumer protection laws. As such, it fits squarely within 11 U.S.C. 523(a)(7) as a "fine [or] penalty . . . payable … to a governmental unit" and it is nondischargeable. 11 U.S.C. 523(a)(7). Consequently, the Court finds that the District's dismissal of the Section 523(a)(2) claims does not bar the District from obtaining the nondischargeable civil penalties under Section 523(a)(7).

## IV. CONCLUSION

For the foregoing reasons the court will grant the District's motion for summary judgment and will enter an order accordingly. [15]

---

[15] The primary relief the Debtor seeks in his complaint is a permanent injunction. A permanent injunction "resolves the merits of a claim and imposes an equitable remedy because a legal one is inadequate", whereas a preliminary injunction "maintains a particular relationship between the parties in anticipation of a decision on the merits, pending completion of the litigation." United States Dept. of Labor v. Wolf Run Mining Co., Inc., 452 F.3d 275, 280 (4th Cir. 2006) (citing eBay, Inc. v. MercExchange, LLC, ___ U.S. ___, 126 S.Ct. 1837, 1839 (2006)). "The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the debtor must establish success on the merits and that the focus on irreparable harm includes the question whether the debtor has an adequate remedy at law." National City Bank of Indiana v. Turnbaugh, 367 F.Supp.2d 805, 821 (D.Md. 2005), aff'd, 463 F.3d 805 (4th Cir. 2006); see also Western North Carolina Alliance v. North Carolina Dept. of Transp., 312 F.Supp.2d 765, 778 (E.D.N.C. 2003) ("The Fourth Circuit standard for issuance of a permanent

cc:    Charles Elliot Wagner
7801 16th St., N.W.
Washington, D.C. 20012

Nancy Alper
Office of the Attorney General for the District of Columbia
441 4th St., N.W., Suite 6N93
Washington, D.C. 20001

Office of the US Trustee
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770

**End of Memorandum**

---

injunction is similar to its standard for issuance of a preliminary injunction.").  Because the court has determined that judgment should be entered against the Debtor on the merits of his claims for relief, there is no need to address the remaining factors to be considered in determining whether to grant a permanent injunction.